1776 K STREET ASSOCIATES, the Metropolitan Club of the City of Washington, D. F. Antonelli, Jr., Washington Medical Center, Inc., et al.

v.

The UNITED STATES.

No. 531-78.

United States Court of Claims.

July 18, 1979.

Whayne S. Quin, Washington, D. C., for plaintiffs; Michael B. McGovern and Wilkes & Artis, Washington, D. C., of counsel.

Thomas L. McKevitt, Washington, D. C., with whom was Asst. Atty. Gen. James W. Moorman, Washington, D. C., for defendant; William E. Hill, Washington, D. C., of counsel.

Before FRIEDMAN, Chief Judge, and NICHOLS and BENNETT, Judges.

### ON DEFENDANT'S MOTION TO DISMISS

PER CURIAM:

This case is that somewhat rare creature in our jurisprudence, the "independent action" under permission of Rule 152(b)—

> * * * [T]o relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court. * * *

Such an action, when it can be brought, lifts the bar of res judicata. Since ours is a court of limited jurisdiction, often inhibited in doing what would seem useful by the strict construction of the consent to be sued, we have had to consider carefully what this rule implies or expresses. *See Carney v. United States*, 462 F.2d 1142, 199 Ct.Cl. 160 (1972); *Andrade v. United States*, 485 F.2d 660, 202 Ct.Cl. 988 (1973), *cert. denied*, 419 U.S. 831, 95 S.Ct. 55, 42 L.Ed.2d 57 (1974).

This newly filed and numbered suit prays for relief from a judgment of this court in *Washington Medical Center v. United States*, 545 F.2d 116, 211 Ct.Cl. 145 (1976), *cert. denied*, 434 U.S. 902, 98 S.Ct. 296, 54 L.Ed.2d 188 (1977). The present parties were all plaintiffs in the former cases, which were consolidated. The object in those cases was to recover moneys paid to the District of Columbia, as agent for the United States, as fees to obtain closing of alleys adjacent to plaintiffs' properties. The holding was that the moneys were properly collected, because the alleys were "original" alleys which belonged in fee to the United States. Plaintiffs do not accept this conclusion. In the former cases they twice moved for rehearing, without success, and now in this "independent action" they state their objections for the third time. Defendant moves to dismiss. We conclude that plaintiffs do not state a cause that could prevail as an "independent action" under any facts alleged in their petition, and, therefore, the petition must be dismissed.

Plaintiffs move for oral argument, but we decide the case without any, per Rule 146(b), as we think the reasons asserted for lifting the bar of res judicata insufficient, without regard to the correctness of the former decision.

Plaintiffs have two non-frivolous reasons for coming here again. One is that a series of new discoveries in the National Archives shows, they say, that the original conveyances by the original proprietors to trustees did not convey any title in the alleys to the United States. Some of this new evidence was disclosed with the two former motions for rehearing, some has been found more recently. The other reason is a change in the "legal climate." Recent successful litigation by one of these plaintiffs, involving other alleys, in another court, and by third parties, also in another court, have been made possible apparently, by placing the required payments for alley closing in escrow, making the suits not against the United States and not subject to the exclusive jurisdiction of this court. *Chesapeake & Potomac Tel. Co. v. District of Columbia*,

D. C. Superior Court, Penn, *J.*, March 28, 1978, reported Washington Law Reporter, June 13, 1978; *Carr v. District of Columbia*, U. S. District Court, District of Columbia, January 12, 1979, mem. op., Flannery, *J.* Judge Penn was informed of this court's decision but attached little weight to it because he thought it was based on less than the entire body of evidence. Judge Flannery took the same view. He treated the Penn decision as collateral estoppel, but not this court's.

■ The correctness of our former decision has been reexamined already, and the Supreme Court has denied certiorari. That decision on its record, must be regarded as unchallengeable. To review the new evidence, unless the grounds for doing so are adequate, would perpetrate the very evil the doctrine of res judicata guards against. For purposes of the motion to dismiss, we must assume, arguendo, therefore, that the new evidence possibly could convince this court that title to the involved alleys was not in the United States, and determine whether, if this were so, the grounds for reopening would be otherwise adequate. As stated in *Andrade, supra*, the petition in an "independent action" of the kind involved really addresses the equity side of the court. Despite the well publicized exclusion of equitable relief from the remedies available here, a claim for money is not barred merely because it rests on equitable grounds. *Pauley Petroleum, Inc. v. United States*, 591 F.2d 1308, 219 Ct.Cl. —— (1979). The trouble with the petition here is that it is wanting in equity.

■ In the previous decision, we reserved the question of estoppel, preferring to decide on the legal issue of who owned the alleys. We consider here whether assuming arguendo the United States did not own them, is retention of fees for closing them unjust enrichment? We conclude it is not. The plaintiffs, as is conceded, paid the fees voluntarily without objection or protest. Their own explanation for doing so is that if they had not, the district government, with all its powers, could have de-

layed projects plaintiffs wanted to proceed with. Plaintiffs were on notice that at least there was a colorable claim the United States did not own the alleys, from decisions they themselves cite and rely on here. *Fitzhugh v. United States*, 59 App.D.C. 285, 40 F.2d 797 (1930); *Brooks v. Brooks*, XXVIII Wash.L.Rptr. 335 (Sup.Ct.D.C. 1900). On the other hand, they had no reason to charge that the claim of United States title was in bad faith. The conclusion seems irresistible that plaintiffs paid to secure whatever title the United States had or to remove a cloud on the title, and to obtain ability to close the alleys without litigation. In this regard, they obtained their money's worth. Plaintiffs say they paid under a mistake. If so, it was a mistake of judgment and not the kind of mistake for which equity will grant relief.

 Plaintiffs knew or should have known that moneys paid to the United States without protest are not recoverable on the mere basis that such moneys were not legally due. *United States v. Edmonston*, 181 U.S. 500, 21 S.Ct. 718, 45 L.Ed. 971 (1901); *Rough Diamond Co. v. United States*, 351 F.2d 636, 642, 173 Ct.Cl. 15, 26 (1965), *cert. denied*, 383 U.S. 957, 86 S.Ct. 1221, 16 L.Ed.2d 300 (1966). *Rough Diamond* distinguishes a case where money was exacted in violation of a law written for protection of the payor. *Applied Devices Corp. v. United States*, 591 F.2d 635, 219 Ct.Cl. —— (1979), illustrates the principle applied in that exception. It is not applicable here. The recovery of money paid the United States by alleged mistake requires a "clear and convincing" showing of the nature of the mistake. *Pauley Petroleum, Inc. v. United States*, 591 F.2d at 1320–21, 219 Ct.Cl. at ——. In that case, as here, the mistake was one of judgment. The question of recovery of money paid by mistake there receives an exhaustive examination which need not be repeated here.

In *Amsden v. United States*, 175 F.Supp. 147, 146 Ct.Cl. 809 (1959), plaintiff had been a party to a pay case which was settled by stipulation. He acquiesced in a pay computation reduced by a mistaken application of the Economy Act. Later, learning of the error from other litigation, he moved to reopen, but the court refused. Defendant, opposing reopening, said plaintiff should file another petition. He did so, and the suit was manifestly an "independent action." He was allowed to prevail. The grounds were: that the scope of the Economy Act was not really adverted to as the subject of the former litigation, and that the defendant had invited plaintiff to bring another suit when the original one could have been reopened. This was a decision by Judge Madden, that master of the equitable approach, and it may be noted that Chief Judge Jones dissented on res judicata grounds. The equities relied on by Judge Madden are not present here: the issue litigated in the former decision is really the same as proposed here, and defendant to say the least never invited plaintiffs to bring an "independent action." There was an unjust enrichment of defendant in *Amsden* not demonstrable here. There is no clear showing of the nature of the mistake, as there was in *Amsden*.

 As regards the newly discovered evidence, plaintiffs appear to have joined with defendant in the previous case in submitting it on summary judgment. They do not appear to have protested that research in the Archives was incomplete. The panel would not have rushed to decide the case if warned as to what apparently was the fact, that the search for evidence was still unfinished. It would have allowed more time for research. A party who submits a case on incomplete or inaccurate testimony cannot, in this court, reopen with new evidence unless he convinces the court that the defects in the previous testimony were present without his fault or negligence. *Kaiser Aluminum & Chemical Corp. v. United States*, 409 F.2d 238, 187 Ct.Cl. 443 (1969) (concurring opinion). As the concurring opinion referred to had the adherence of four of the seven judges who heard the case, it is clear it must be regarded as an alternate ground. The same counsel represented the plaintiffs in the original *Washington Medical Center* case here, then in the

Superior Court, and then in filing of the present "independent action." He does not attempt to explain why he did not educate our panel as to the insufficiency of the evidence he now alleges.

 Finally, we turn to the effect in equity of the existence of decisions subsequent to the one to be reopened, in conflict, and allegedly based on better facts or law. Plaintiffs cite a number of cases, of which *Pierce v. Cook Co.*, 518 F.2d 720 (10th Cir. 1975) is typical. They involve common participants in an accident, the removal of some but not all claims to the Federal courts by diversity, and conflicts between the Federal courts and state dispositions though the Federal courts should have conformed to state law by *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In such circumstances, a Federal court may look with aversion on instances when its decisions may end up in conflict with state ones and seek to effect correction by F.R.Civ.P. 60(b), the counterpart of our Rule 152. Defendant says that in the absence of such considerations, there is nothing in subsequent conflicting decisions, per se, to oblige a court to reopen its own previous decisions, once res judicata, even if the later decisions convince the court its earlier decisions were wrong. *Pierce* was heard *en banc* and four judges dissented. The majority analysis affords persuasive evidence that defendant's statement is correct. Short of the compelling circumstances before that court, the result would have been different.

Plaintiffs do not allege that our former decision is having an adverse collateral estoppel or res judicata effect on other cases. The decisions they do cite would refute such a claim if made. Independent of getting the fees back, plaintiffs say they would like to expunge the holding we made respecting the United States having title to the alleys but they fail to explain why the latter is important to them. They have the alleys. The defendant has the fees, but under circumstances where we fail to see unjust enrichment.

The petition therefore does not present allegations, that, if true, would warrant a breach of the res judicata bar. The claim is res judicata. A reexamination of its original grounds, or a reopening of the record to receive new evidence is not now permissible under that doctrine. *United States v. Sioux Nation*, 518 F.2d 1298, 207 Ct.Cl. 234, *cert. denied*, 423 U.S. 1016, 96 S.Ct. 449, 46 L.Ed.2d 387 (1975). The defendant's motion to dismiss is therefore sustained, and the petition is dismissed.