JACK FAUCETT ASSOCIATES, INC., et al., Plaintiffs,

v.

AMERICAN TELEPHONE AND TELEGRAPH COMPANY, et al., Defendants.

MCKINLEY, SCHMIDTLEIN & MITCHELL, Plaintiff,

v.

AMERICAN TELEPHONE AND TELEGRAPH COMPANY, et al., Defendants.

COHEN & ANNAND, P.C., Plaintiff,

v.

AMERICAN TELEPHONE AND TELEGRAPH COMPANY, et al., Defendants.

JEROS TACKLE COMPANY, INC., et al., Plaintiffs,

v.

AMERICAN TELEPHONE AND TELEGRAPH COMPANY, et al., Defendants.

LARKIN GENERAL HOSPITAL, LTD., Plaintiff,

v.

AMERICAN TELEPHONE AND TELEGRAPH COMPANY, et al., Defendants.

Civ. A. Nos. 81–1804, 81–2623, 81–2624, 81–2781 and 82–0436.

United States District Court, District of Columbia.

June 27, 1983.

William Simon, Howrey & Simon, Washington, D.C., for plaintiffs.

George L. Saunders, Jr., Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

JACKSON, District Judge.

These five consolidated class action antitrust cases come before the Court on plaintiffs' motion for offensive application of the doctrine of collateral estoppel to preclude defendants from relitigating certain issues determined by a judgment upon a jury verdict of the United States District Court for the Southern District of New York and affirmed by the United States Court of Appeals for the Second Circuit in the case of *Litton Systems, Inc. v. American Telephone & Telegraph Co.,* 700 F.2d 785 (2d Cir.1983) (*"Litton"*). For the reasons set forth below, plaintiffs' motion will be granted. The Court is aware, however, that to do so will have the practical effect of partial summary judgment for plaintiffs, leaving for trial only issues of damages applicable to a class of plaintiffs who have yet to be formally notified of the pendency of the actions. In contemplation of the time and cost associated with class actions generally, and of the fact that if the Court is in error in the preclusive effect it accords to *Litton* a trial on the merits may be required, any determination of damages will be premature. Therefore, the Court concludes, in accordance with 28 U.S.C., § 1292(b), that the matter involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from this Order may materially advance the ultimate termination of the litigation, and will stay all further proceedings herein for a period of ten (10) days or until such time as the Court of Appeals acts upon a timely application for an appeal hereunder.

Plaintiffs are seven businesses which were required during a 10-year period ending in 1978 to obtain and pay for interface devices or "protective connecting arrangements" ("PCA's") from defendants American Telephone & Telegraph Company ("AT & T") and its several operating companies throughout the United States ("Bell system") in order to connect telephone terminal equipment they had acquired from non-Bell system suppliers to the AT & T tele-

phone network.[1] They allege that the requirement of the interface device which AT & T imposed by tariff filed with FCC constituted a violation or violations of the Sherman Act, Sections 1 and 2, 15 U.S.C., §§ 1, 2, by which AT & T intended to and did obtain and perpetuate a monopoly in the telephone terminal equipment market.[2] AT & T has consistently insisted that the PCA's were a necessary prophylaxis against possible harm to the telephone network from defective or inferior terminal equipment not manufactured by the Bell system.

Plaintiffs represent without contradiction by defendants (and the *Litton* record appears to support them to the extent it is before this Court) that in June, 1976, Litton Systems, Inc., a terminal equipment manufacturer, and two of its subsidiaries sued AT & T, Western Electric Company and Bell Telephone Laboratories, Inc. (AT & T's manufacturing and research subsidiaries, respectively), and seven regional Bell system operating companies in the U.S. District Court for the Southern District of New York alleging identical violations of the Sherman Act in monopolizing and conspiring and attempting to monopolize trade in telephone terminal equipment by imposing an illegal charge to interconnect non-Bell equipment to AT & T's national telephone network. Pretrial proceedings consumed over four years, during which extensive discovery was taken by and of both sides and a comprehensive defense motion for partial summary judgment was denied.

487 F.Supp. 942 (S.D.N.Y.1980). Trial began in 1980, ran for more than five months, generated 18,000 pages of testimony and 945 exhibits, and concluded with a jury verdict for Litton in January, 1981, for nearly $92 million as a *competitor* and $268,000 as a *customer* of AT & T which the trial court then trebled. Motions for judgment n.o.v. and a new trial were denied, 525 F.Supp. 154 (S.D.N.Y.1981), and on February 3, 1983, the U.S. Court of Appeals for the Second Circuit unanimously affirmed. 700 F.2d 785 (2d Cir.1983). Rehearing and rehearing *en banc* were denied, apparently without a dissenting vote, on March 31, 1983.

■ Plaintiffs here urge that defendants be precluded from relitigating 11 specific issues presented in *Litton* which, they say, determined their own standing as customers to sue, the relevant product market, defendants' monopoly power and their use of that power anticompetitively, causation, damage, and the invalidity of certain affirmative defenses. They say that each of those issues was actually and necessarily determined adversely to defendants in the proceedings which culminated in the Second Circuit's opinion in *Litton*.

The Court finds from a review of that decision that such is the case. Judge Oakes' 89-page opinion for the court, affirming in all respects the verdict and judgment for Litton as both competitor and customer, based upon special interrogatories (see Ap-

1. Plaintiffs have been certified pursuant to Fed. R.Civ.P. 23 to represent a class of "all users of telephone terminal equipment who received bills from and made payments to any Bell system company for the installation or rental of interface devices between November 20, 1970 and July 1, 1978," the inclusive dates encompassing the period of limitations to the abandonment of the practice of charging for the interface devices.

2. In 1968 the FCC permitted AT & T's tariff requiring the use of PCA's with all terminal equipment not manufactured or provided by AT & T to become effective January 1, 1969, *see In re American Telephone & Telegraph Co. "Foreign Attachment" Tariff Revisions,* 15 F.C. C.2d 605 (1968), expressly withholding formal approval, however, and refusing to rule on its validity until further investigation could be con-

ducted. *Id.* at 610. Six years later, the FCC found that AT & T had failed to prove that PCA's were actually necessary to protect the network from harm and voided the tariff as an "unnecessarily restrictive limitation" and an "unjust and unreasonable discrimination." *In re Proposals for New or Revised Classes of Interstate & Foreign Message Toll Telephone Service (MTS) & Wide Area Telephone Service (WATS),* 56 F.C.C.2d 593, 598 (1975) In its stead the FCC determined to formulate a set of standards to which all terminal equipment, no matter the source, would be required to conform, and its decision to do so was sustained on appeal in *North Carolina Utilities Commission v. F.C.C.,* 552 F.2d 1036 (4th Cir.), *cert. denied,* 434 U.S. 874, 98 S.Ct. 222, 54 L.Ed.2d 154 (1977), taking effect in June, 1978.

pendix) answered by the jury upon legally sufficient evidence and in accordance with correct instructions as to the law by the trial court, definitively determines, expressly or by necessary implication, each and every one of those issues upon which plaintiffs would be obliged to prevail again here in order to recover. The Second Circuit said:

> The gist of Litton's case and the jury's findings is that the interface device was unnecessary and uneconomical and that AT & T at all times knew this was so, and that despite clear prior indications from the FCC that the tariff would be set aside as unreasonable and destructive of competition, AT & T nevertheless proposed and fought to maintain the tariff— all in bad faith in order to exclude competition in the terminal equipment market.
>
> \* \* \* \* \* \*
>
> We have considered all the parties' contentions and have found none requiring reversal. We find that the evidence was sufficient, both in terms of its weight and from the standpoint of causation, to support the damage award and that the district court's instructions to the jury and evidentiary rulings were free from prejudicial error. 700 F.2d at 790.

The doctrine of collateral estoppel holds that, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a dif-ferent cause of action involving a party to the prior litigation. *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979).[3] It may be invoked offensively as well as defensively, i.e., by a plaintiff to foreclose a defendant from litigating an issue it has previously litigated unsuccessfully in an action with another party, *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979), unless to do so would be unfair to the defendant. *Carr v. District of Columbia,* 646 F.2d 599, 605 (D.C.Cir.1980). *Compare Hardy v. Johns-Manville Sales Corp.,* 681 F.2d 334, 346 (5th Cir.1982); *Schneider v. Lockheed Aircraft Corp.,* 658 F.2d 835, 852 (D.C.Cir.1981), *cert. denied,* 455 U.S. 994, 102 S.Ct. 1622, 71 L.Ed.2d 855 (1982). Unfairness depends, *inter alia,* upon whether the defendant had incentive to litigate the issues to be foreclosed fully and vigorously in the earlier action; whether the precluding judgment is inconsistent with others; and whether significant procedural opportunities are available now which were unavailable in the prior forum. *See Parklane Hosiery Co. v. Shore, supra,* 439 U.S. at 330–31, 99 S.Ct. at 651–52. Federal courts are given broad discretion to determine when offensive collateral estoppel should be applied. *Id.* at 331, 99 S.Ct. at 651.[4]

Defendants do not seriously dispute whether AT & T had sufficient incentive to litigate *Litton* fully and vigorously, because

---

**3.** AT & T contends that two of the jury's findings—its affirmative answers to special interrogatories inquiring as to whether AT & T's *attempt* at monopoly had proximately caused damage and whether the interface device tariff had been filed in bad faith—were "unnecessary" to its verdict because they were reached upon further deliberation after the initial verdict establishing liability and damages had been returned. But those findings, once reached, supplied alternative grounds for the verdict upon claims necessarily raised by the evidence and deserving of decision if the jury could agree upon them, and were, moreover, affirmed on appeal. 700 F.2d at 803. *See* Restatement (Second) of Judgments, § 27 comment o (1982); *Winters v. Lavine,* 574 F.2d 46, 66–69 (2d Cir.1978).

**4.** One of the purposes the doctrine of defensive collateral estoppel serves—judicial economy—is, as a rule, disserved by its offensive counterpart. *See Parklane Hosiery Co. v. Shore, supra,* 439 U.S. at 329–30, 99 S.Ct. at 650–51. Thus it may be appropriate to make a threshold inquiry here—although defendants have not suggested it—as to whether plaintiffs might have joined in *Litton. Cf. GAF Corp. v. Eastman Kodak Co.,* 519 F.Supp. 1203, 1214–15 (S.D.N.Y.1981). The Court concludes that it is exceedingly unlikely that plaintiffs here would have been permitted to join their class claims as customers to further complicate what was from its inception primarily a complex competitor's claim; thus, it cannot be said that withholding the benefit of the doctrine from plaintiffs now would be conducive to judicial economy.

it is clear that it did so, incentive or no. Litton sued as both competitor and customer, claiming damages of millions of dollars in lost sales of its competing terminal equipment and hundreds of thousands of dollars in fees paid to AT & T to use its own telephones. The magnitude of potential liability to Litton alone (not to mention the prospect of subsequent suits by just such plaintiffs as these) was foreseen by AT & T from the outset, and it defended accordingly. And there are, of course, no "procedural opportunities" available to AT & T in this action which were not available in New York (where AT & T has its corporate headquarters) in a sister federal court with a comparable jury panel. In sum, there is nothing in the record before this Court to suggest that, if new counsel for AT & T might try the case differently a second time, he would or could also do so more thoroughly than, or would enjoy any procedural advantage denied to, his predecessor.[5]

Defendants argue that the result in *Litton* is "inconsistent" with other "decisions" upon the same issues, namely, various decisions of the FCC explicating its ruling in *Carterfone*[6] which precipitated the tariff, decisions of several state regulatory agencies, the opinions of two judges of this court in antitrust proceedings against AT & T,[7] and the report of a panel of scientists as to the danger posed by non-Bell terminal equipment connected directly to the network. The short answer to the argument is that those "decisions" are neither the final judgments contemplated by the rule of collateral estoppel nor are they "inconsist-

ent" with either the ultimate facts or the law of *Litton.*

Defendants' principal contention in attempting to demonstrate the unfairness of denying them a second opportunity to litigate the *Litton* issues is in the nature of newly discovered evidence. In preparing for trial in another case, they say, they have discovered evidence to suggest that the Chief of the FCC's Common Carrier Bureau between 1974–78 (and possibly others on the staff as well) indulged an anti-AT & T bias by preparing recommended decisions for the Commission "which were designed to assist competitors of AT & T and the Department of Justice in pursuing antitrust cases against the Bell system."

Assuming without deciding that the showing defendants must make here to avoid collateral estoppel is less than that which would be required of AT & T to obtain relief under Fed.R.Civ.P. 60(b) in *Litton, see* Restatement (Second) of Judgments § 29 comment j (1982), they must nevertheless proffer evidence which is not only relevant and material to the issues as to which they seek to avoid preclusion, but is also more than conjecturally likely to make a difference in outcome. *See GAF Corp. v. Eastman Kodak Co.,* 519 F.Supp. 1203, 1215 (S.D.N.Y.1981). What defendants have proffered, however, is nothing more than a possibility that further discovery might reveal some such evidence specifically compromising the FCC's post-*Carterfone* proceedings, not that they have such evidence in hand, and it is doubtful it would be admissible if it exists at all. *See*

---

5. AT & T asserts that 16 of its co-defendants here are Bell System operating companies who were *not* parties in *Litton* and cannot, therefore, be estopped by the *Litton* judgment. The Bell System companies who *were* parties in *Litton,* however, were represented (as all are here) by the same counsel and were presented to the jury as a "single entity" in which, "on matters of system-wide importance [such as] competition and interconnection, the decisions were made at AT & T" (which may explain the jury's finding in defendants' favor in *Litton* on the conspiracy charge). *See Int'l Telephone & Telegraph Corp. v. General Telephone & Electronics Corp.,* 380 F.Supp. 976 (M.D.N.C.1974),

vacated and remanded on other grounds, 527 F.2d 1162 (4th Cir.1975). In any case the 16 have proffered no evidence to this Court that they, or any of them, stand in a different relation to AT & T than its co-defendants did in *Litton.*

6. *In re Use of the Carterfone Device,* 13 F.C. C.2d 420 (1968).

7. *United States v. AT & T,* 524 F.Supp. 1336 (1981) and *Southern Pacific Communications Co. v. AT & T,* 556 F.Supp. 825 (1982).

*United States v. AT & T,* 524 F.Supp. 1381, 1387 (D.D.C.1981).

For the foregoing reasons, therefore, it is, this 27th day of June, 1983,

ORDERED, that plaintiffs' motion for collateral estoppel is granted; and it is

FURTHER ORDERED, that the following facts are found by the Court to exist as a matter of law for purposes of this case:

1. That the class plaintiffs have standing to sue for damages as customers of defendants.

2. That the relevant product market is the sale and lease of telephone terminal equipment consisting of PBX systems and key telephone systems.

3. That AT & T possessed monopoly power in the relevant market during the period in question.

4. That AT & T had specific intent to obtain monopoly power in the relevant market during that period.

5. That there was a dangerous probability that AT & T would obtain monopoly power in the relevant market.

6. That AT & T attempted to and did willfully obtain and maintain its monopoly power in the relevant market by anticompetitive or predatory conduct, viz, filing its tariff requiring an interface device in bad faith; opposing certification of telephone terminal equipment in bad faith; and intentionally delaying the provision and installation of interface devices.

7. That AT & T's conduct aforesaid proximately caused injury and damage to the class plaintiffs herein.

8. That the interface device was not necessary to protect AT & T's telephone network from harm, and that any claim to the contrary is baseless.

9. That the *Noerr-Pennington* doctrine is not a defense to the claims of the class plaintiffs herein.

IT IS FURTHER ORDERED, that all further proceedings herein are stayed for a period of ten (10) days or until such time as the Court of Appeals acts upon any timely application for an appeal hereunder.