Raymond J. DONOVAN, Secretary of Labor, et al., Plaintiffs,

v.

UNITED STATES POSTAL SERVICE, Defendant.

Civ. A. No. 78–602.

United States District Court, District of Columbia.

June 25, 1981.

As Amended June 29, 1981.

Sue Ann Wolff, Counsel for Trial Litigation, U. S. Dept. of Labor Mozart G. Ratner,

Bruce H. Simon, c/o National Association of Letter Carriers, James R. Barnett, Donald M. Murtha & Associates, Washington, D. C., for plaintiffs.

Edward F. Ward, Jr., Stephen E. Alpern, Washington, D. C., James S. Petrie, Chicago, Ill., Milton C. Denbo, Eugene B. Granof, Vedder, Price, Kaufman, Kammholz & Day, Washington, D. C., for defendant.

## MEMORANDUM OPINION

AUBREY E. ROBINSON, Jr., District Judge.

Before the Court are Plaintiff Secretary of Labor's Motion for Partial Summary Judgment and Motion to Compel an Accounting of Backwages in the above captioned case. These motions became ripe in 1980, but were stayed due to extraordinary circumstances presented in this litigation. *See Donovan v. U. S. P. S.,* 530 F.Supp. 872, 875 (D.D.C.1981). On June 15, 1981, the Court vacated all stays in these cases, and permitted the parties to supplement the pleadings relating to the above motions.

## I. BACKGROUND

The lead case in this set of consolidated cases was filed by the Secretary of Labor upon conclusion of vigorous litigation between private litigants and USPS concerning certain violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq. Id.* at 873–874. The pending motions relate to the FLSA violations litigated in the *Smith/Kaplan* cases, *id.* at 873 n.1, 5, namely USPS' failure to (1) include certain required premiums in the employees' regular rate of pay for the purposes of overtime compensation (regular rate violations), (2) utilize a rounding rule which averages work over a one week period (rounding violations), and (3) compensate employees for overtime that was recorded on the employees' time records, but disallowed by the employees' supervisors as unauthorized, although "suffered or permitted" by the Postal Service (suffer or permit violations). *See Smith v. U.S.P.S.,* No. 1570 (D.D.C.

January 13, 1978). USPS admitted the first two violations, and instituted a retroactive payment program to compensate its employees for the violations. The program, implemented in July of 1976, did not entail payment of liquidated damages. *Donovan v. U.S.P.S.,* at 879. In testimony before this Court, Postmaster General Bolger admitted that USPS had also committed the suffer or permit violations. *Id. See, inter alia,* Tr. pp. 24, 26, 43–44 (March 19, 1981). Employees who opted into the *Smith/Kaplan* litigation have been compensated for the suffer or permit violations, including 80% liquidated damages; the *Donovan* employees have received no such compensation.

The *Smith/Kaplan* litigation bears directly on the pending motions both because of the history of this action, *id.* at 872–875, 877–879, and because the FLSA violations resolved there are identical to those being litigated here. In that litigation, Judge June Green (1) found that USPS had committed all of the above violations, (2) ordered a full accounting, and (3) awarded 80% liquidated damages. *Id.* at 877–878. USPS never complied with the accounting order, and all parties appealed the liquidated damages ruling. *Id.,* at 878. Prior to any appellate litigation, the parties settled the *Smith/Kaplan* cases. The settlement provided that (1) the retropayments would serve as compensation for all but the "suffer and permit" violations, (2) USPS would pay, on the basis of a formula not herein relevant, $53 million compensation for the suffer and permit violations and the 80% liquidated damages relating to those violations, and (3) 80% liquidated damages on the retropayments made to the *Smith/Kaplan* plaintiffs. *Id.* at 886. Pursuant to the settlement agreement, the *Smith/Kaplan* litigation, both in the District Court and the Court of Appeals, was dismissed with prejudice. *Id.*

During the settlement of *Smith/Kaplan* and other private FLSA litigation against the Postal Service, PMG Bolger requested that the Secretary of Labor commence litigation against USPS, in order to preclude

further private FLSA litigation. *Id.* at 874. At the time of the *Smith/Kaplan* settlement agreement, all the parties to that agreement assumed that it would be applied to employees who had not opted into the litigation, by way of settlement of the Secretary's action. *Id.* at 888–889. Settlement did not ensue, however, and the private parties intervened in the Secretary's action to enforce the alleged non-plaintiff agreement. *Id.* at 874. At the behest of the Court of Appeals, this Court tried the existence *vel non* of the alleged non-plaintiff agreement prior to adjudicating the FLSA legal questions. *Id.* at 875 n.14. This litigation provided the Court with in depth knowledge of all aspects of the *Smith/Kaplan* litigation.

PMG Bolger testified on the last day of trial. He stated, *inter alia* :

> I know I have the legal right to [apply the statute of limitations]. My counsel have said that. But as a responsible public official, I should not use that as an excuse and I would not do it. (Tr. p. 27). The law [the FLSA] went into effect on May 1, 1974. We should have had compliance with it as soon as possible, as soon as we were able to do it; and from May 1, 1974 out, we have to compensate people when they establish we were in violation with the law. (Tr. p. 44).

Mr. Bolger thus represented to the Court that the Postal Service would not assert the Statute of Limitations[1] as an affirmative defense in this litigation. In fact, the Court rejected Plaintiffs' promissory estoppel contention in part because of Bolger's testimony. *Id.,* at 893.

Four issues are presented here, to wit: (1) has the Postal Service violated the FLSA, (2) should the Court order an accounting, (3) should the Court award liquidated damages, and (4) has USPS waived the Statute of Limitations defense. For the reasons stated below, the Court answers all of the questions in the affirmative.

## II. COLLATERAL ESTOPPEL

Collateral estoppel "prohibits parties who have litigated one cause of action from relitigating in a second cause of action matters of fact which were . . . determined in the first litigation." (citations omitted) *McCord v. Bailey,* 636 F.2d 606, 608 (D.C. Cir.1980). It may be used by a plaintiff who was not a party in the earlier action, at least in Federal question litigation, at the discretion of the trial court. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 331, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979). Certain criteria must be evaluated for the trial court to properly exercise its discretion. *Id.* See also *Carr v. D. C.,* 646 F.2d 599, 605–07 (D.C.Cir.1980). The three issues presented here are (1) are the facts determined by Judge Green amenable to collateral estoppel application, (2) if so, should the Court, in its discretion, apply the doctrine in the instant case; and (3) if so, what is the collateral estoppel effect of Judge Green's ruling.

### A. Amenability

In the *Smith/Kaplan* litigation, Judge Green determined that (1) USPS had committed all the violations litigated herein; (2) the violations were not *de minimis*, and that the amount of damages suffered by the 90,000 plaintiffs could be accurately determined only after a full accounting was performed, see *Smith v. U.S.P.S.,* No. 75–1570 (D.D.C. Oct. 4, 1977); (3) with respect to all but the rounding violations, USPS "knew or should have known that its rules and procedures were in direct conflict with the FLSA and that such procedures would lead to a failure to compensate its employees in compliance with the Act," *Smith v. U. S. P. S.,* No. 75–1570, (D.D.C. Jan. 13, 1978); (4) with respect to the rounding violations, USPS "*might* have believed, in good faith and upon reasonable grounds" that it did not violate the FLSA, *id.;* and (5) USPS was therefore liable to the plaintiffs "for an amount equal to 80% of any compensatory damages for which USPS is ultimately lia-

---

1. To prevent the Secretary of Labor from intervening in Smith/Kaplan, USPS had initially waived the Statute of Limitations to February 8, 1975. *Id.,* at 881. His testimony at trial clearly reflected that he would not interpose any Statute of Limitations defense.

ble." *Id.* The Secretary asks the Court to preclude relitigation of the facts found by Judge Green, *viz.* (1) that USPS committed the violations, (2) that the violations were not *de minimis*, and (3) that USPS knew or should have known that its rules and procedures were in direct conflict with the FLSA and that such procedures would lead to a failure to compensate the employees. He further requests that, on the basis of these facts, the Court award 100% liquidated damages and order an accounting.

■ Defendant alleges that the doctrine of collateral estoppel is inapplicable here because (1) there are material differences between the facts in this case and those litigated in *Smith/Kaplan*, (2) there was no valid judgment in *Smith/Kaplan*, and (3) the facts did not form the predicate for a final judgment. It is clear that, for collateral estoppel to apply, "the same issue must be at stake in both cases, and the issue must have been litigated and decided in the first suit." *McCord v. Bailey*, 606 F.2d at 609. The issues at stake are identical. The violations were indigenous to USPS' payroll and timekeeping practices, and thus affected all employees who worked overtime between May 1, 1974 and the date of USPS' FLSA compliance.[2] *Donovan v. U. S. P. S.*, 530 F.Supp. at 874. The significance of the violations, as found by Judge Green, has been reaffirmed in evidence presented to the Court in *Donovan. Id.*, at 885, 886. Finally, Judge Green's ruling concerning what USPS "knew or should have known" apply to the violations alleged herein—they are exactly the same claims as those adjudicated in *Smith/Kaplan*. The issues in question are identical. *See Schneider v. Lockheed*, 658 F.2d 835, 851–852 (D.C.Cir.1981).

■ It is evident that a valid judgment issued in the *Smith/Kaplan* cases; they were dismissed with prejudice by stipulation pursuant to Fed.Rule Civ.Proc.

41(a)(1)(ii). Such a dismissal constitutes a valid judgment on the merits, and is entitled to *res judicata* effect. *Lawlor v. Natl. Screen Service Corp.*, 349 U.S. 322, 327, 75 S.Ct. 865, 868, 99 L.Ed. 1122 (1955); *Astron Industrial Assoc. v. Chrysler*, 405 F.2d 958, 960 (5th Cir. 1968); *Burns v. Fincke*, 197 F.2d 165, 166 (D.C.Cir.1952). For *res judicata* and collateral estoppel purposes, a judgment does not, as USPS alleges, extinguish review of the underlying claim. Rather, courts must "examine the record of the prior proceedings" in order to ascertain *res judicata* and collateral estoppel effect. *See Ashe v. Swenson*, 397 U.S. 436, 444, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970). This Court has had a unique opportunity to examine the record of the prior proceeding. *Donovan v. USPS, supra.* It is clear to the Court, upon examination of that record, that (1) Judge Green's rulings were thoughtful and well-reasoned, (2) the parties had a full and fair opportunity to litigate before her, and (3) her rulings in *Smith/Kaplan* were virtually immutable. Furthermore, it is evident that the *Smith/Kaplan* settlement agreement (which precipitated the dismissal with prejudice) was based upon Judge Green's rulings. The settlement provided compensation to the plaintiffs for all of the alleged violations and included payment of 80% liquidated damages. It obviated the need for an accounting by providing a payout formula agreed to by the parties. The dismissal with prejudice and the settlement agreement addressed all issues decided by Judge Green in a way that did not require her to vacate any Memoranda or Orders. The stipulation of dismissal with prejudice constitutes a valid, final judgment in the *Smith/Kaplan* litigation.[3]

Finally, USPS alleges that it can be estopped from contending the facts as found by Judge Green only if those facts formed

---

**2.** It is undisputed that USPS effected FLSA compliance for these violations on May 5, 1978 in USPS' Western Region and on May 19, 1978 in all other USPS Regions.

**3.** Had Judge Green vacated any of the Memoranda and Orders issued, they would not be

part of a valid judgment. No collateral estoppel effect could therefore be given to a vacated memorandum and order. *See Schneider v. Lockheed*, 658 F.2d at 851 n.16 and accompanying text (D.C.Cir.1981).

the predicate for a final judgment within the meaning of 28 U.S.C. § 1291. This contention is devoid of merit. "Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive..." *Montana v. U. S.*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). Judge Green "actually and necessarily determined" that (1) USPS had committed the FLSA violations in question, (2) that the violations were not *de minimis*, and (3) that for all but one of the claims, USPS knew or should have known that its rules and procedures were in direct conflict with the FLSA. The finality requirement for collateral estoppel is not governed by 28 U.S.C. § 1291. Rather, it is governed by a rule of reason. As Judge Friendly stated for the Second Circuit in *Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80, 89 (2d Cir. 1961), *cert. denied* 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962):

> whether a judgment, not final in the sense of 28 U.S.C. § 1291, ought nevertheless be considered "final" in the sense of precluding litigation on the same issues, turns upon such factors as the nature of the decision (i.e. that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review. "Finality" in the context here relevant means little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again.

The Second Circuit has consistently affirmed this approach. *See United States ex rel. DiGiangiemo v. Regan*, 528 F.2d 1262, 1265 (2d. Cir. 1975), *cert. denied* 426 U.S. 950, 96 S.Ct. 3172, 49 L.Ed.2d 1187 (1976), and it has been approved by three other circuits and the Restatement (Second) Judgments. *See Dyndul v. Dyndul*, 620 F.2d 409, 411–412 (3d. Cir. 1980); *Miller Brewing Co. v. Schlitz Brewing Co.*, 605 F.2d 990, 991, 996 (7th Cir. 1979); *Pye v.*

*Georgia Dept. of Transportation*, 513 F.2d 290, 292 (5th Cir. 1975). Restatement (Second) Judgments, § 41 states:

> The rules of res judicata are applicable only when a final judgment is entered. However, for the purposes of issue preclusion, ... "final judgment" includes any prior adjudication of an issue in another action between the parties that is determined to be *sufficiently firm* to be accorded conclusive effect. (emphasis added)

Section 41 comment g discusses the firmness requirements, and states:

> [T]he court should determine that the decision to be carried over was adequately deliberated and firm... [T]hat the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal, are factors supporting the conclusion that the decision is final for the purpose of preclusion.

Judge Green's rulings resulted after vigorous litigation between the parties and oral argument. Her decisions were well-reasoned and imminently correct. They were ultimately subject to appeal—a right waived by USPS when it entered into the stipulation of dismissal.[4] This Court has conducted an exhaustive review of the *Smith/Kaplan* record, and concludes that the Secretary has met the "amenability" requirement for the facts found by Judge Green in *Smith/Kaplan*.

### B. Discretion

As the Supreme Court stated in *Parklane Hosiery*, 439 U.S. at 331, 99 S.Ct. at 651, the application of "offensive" collateral estoppel rests in the discretion of the trial court. Ultimately, the court should not permit the application of offensive collateral estoppel if it would be unfair to the defendant. *Id.; Carr v. D. C.*, 646 F.2d at 605. Defendant contends that it would be unfair to permit

---

**4.** Had the parties submitted a motion for dismissal pursuant to Fed.Rule Civ.Pro. 41(a)(2), they could have requested the Court to vacate its prior rulings, and thus precluded collateral estoppel effect. *Id.* *See* e.g. *Fanex, Inc. v. Early, Cassidy, and Shilling*, No. 81–531 (April 28, 1981).

the use of collateral estoppel in this case because (1) it did not have the opportunity to fully litigate the issues, (2) the Secretary of Labor could have joined in the *Smith/Kaplan* proceedings, and (3) there are reasons to doubt the quality, extensiveness, and fairness of procedures followed in the prior litigation. Defendant's assertion here is the quintessence of absurdity. All the motions were fully litigated before Judge Green, and a review of the record reflects that the procedures followed were fair, and that her review was extensive and of the highest quality. Moreover, the Secretary did not join the *Smith/Kaplan* litigation at the request of the Postal Service, and would have been faced with serious legal questions had he attempted intervention. It is not in the least bit unfair to permit the application of collateral estoppel in the instant case.

C. Collateral Estoppel Effect

■ Collateral estoppel precludes the relitigation of three findings by Judge Green, to wit: (1) that USPS has committed the FLSA violations in question, (2) that the violations are not *de minimis*, and (3) that, with the exception of the rounding violations, USPS knew or should have known that its rules and procedures were in direct conflict with the FLSA and that such procedures would lead to a failure to compensate its employees in compliance with the Act.

III. ADDITIONAL FINDINGS

USPS has admitted in its pleadings and in the testimony of PMG Bolger that it committed the violations in question. Collateral estoppel aside, a review of all the pleadings in the instant litigation, in conjunction with the trial in *Donovan v. U. S. P. S., supra,* indicates that it is now beyond dispute that the violations in question occurred.

The record in *Donovan* also indicates that USPS had no reasonable belief that its rules and procedures did not violate the FLSA, *id.* at 877, and that the violations were substantial, not *de minimis. Id.* at 885, 886. As the Postmaster General stated at

trial, "we have been diverted from the real issue in this case—finding out who the employees are that we owe money to, how much it is, and get [sic] them paid." *Id.,* Tr. at 28 (March 19, 1981).

IV. ORDERING AN ACCOUNTING

The Secretary has presented alternative grounds for a determination that the Postal Service committed all of the *Smith/Kaplan* violations and that those violations were not *de minimis.* Either of those grounds (application of collateral estoppel or USPS admissions) constitute a sufficient showing of the violations to shift the burden to USPS. *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687–688, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946). There is little doubt as to the Court's power once a sufficient showing of a violation is made. As Justice Harlan stated in another FLSA action:

Thus the Administrator invoked the jurisdiction of the District Court to enjoin acts and practices made illegal by the Act and *to enforce compliance with the Act.* Such a jurisdiction is an equitable one. Unless otherwise provided by statute, *all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction.* And since the public interest is involved in a proceeding of this nature, those equitable powers assume an even broader and more flexible character than when only a private controversy is at stake... [T]he court may go beyond the matters immediately underlying its equitable jurisdiction ... and give whatever other relief may be necessary under the circumstances. (emphasis added)

*Mitchell v. DeMario Jewelry,* 361 U.S. 288, 291, 80 S.Ct. 332, 334–335, 4 L.Ed.2d 323 (1960). The Court concluded in *Mitchell* that, in an FLSA action, all inherent equitable powers are retained by the District Court. *Id.* at 291–296, 80 S.Ct. at 334–337.

■■ Ordering an accounting falls within the equitable powers of the Court. *See Dairy Queen v. Wood,* 369 U.S. 469, 478, 82 S.Ct. 894, 900, 8 L.Ed.2d 44 (1962). It is

necessary when "accounts between the parties are of such a complicated nature that they can be satisfactorily unraveled only by a court of equity." *Id.* at 478, 480, 82 S.Ct. at 900, 901 (Harlan, J. concurring). *See also Rosenak v. Poller,* 290 F.2d 748 (D.C. Cir.1961). This is precisely the type of litigation where an accounting is mandated. The rights of between 500,000 and 700,000 employees are at stake. Each employee will have worked a different amount of "suffer or permit" time, under differing circumstances, with different salary scales. Only a full accounting can insure that each individual is compensated for the FLSA violations presented here. An accounting order will follow this Memorandum Opinion.

## V. LIQUIDATED DAMAGES

Section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b) provides:

Any employer who violates the provisions of [the FLSA] shall be liable to the employee or employees affected in the amount of their ... unpaid overtime compensation, ... and in an additional equal amount as liquidated damages.

The award of liquidated damages is mandatory unless the employer shows (1) "that the act or omission giving rise [to the violation] was in good faith," and (2) "that he had reasonable grounds for believing that his act or omission was not a violation of the Act." 29 U.S.C. § 260. Should both the above criteria be met by an employer, the award of liquidated damages is discretionary. *Laffey v. Northwest Airlines,* No. 2111–70 (D.D.C. Nov. 21, 1980) slip op. at 2 (on remand). Again, there are two independent grounds for finding that USPS does not meet the criteria, *viz.* (1) the findings of Judge Green, and (2) the findings of this Court in the *Donovan* trial.

What constitutes "reasonable grounds" has been clearly established by the Court of Appeals in *Laffey v. Northwest Airlines,* 567 F.2d 429, 464–466 (D.C. Cir.1976). This Court is intimately familiar with both the *Laffey* litigation and the instant case, and it is abundantly clear that an award of liquidated damages is required. Here, USPS' rules and procedures were in *direct conflict* with the FLSA, "and the employer knew it. 'If he did not know, it was because he did not look, or looking, did not see, or want to see what was so plainly there.'" *Mayhew v. Wirtz,* 413 F.2d 658, 663 (4th Cir. 1969); *Laffey v. Northwest Airlines,* slip op. at 5.

The only issue left to be determined with respect to liquidated damages is the percentage used to determine the award. The Court is mindful of Judge Green's award of 80% liquidated damages, and that the purpose of the award is to compensate employees for delay in receiving their lawful compensation. *See Overnight Motor Transp. Co. v. Missel,* 316 U.S. 572, 583–584, 62 S.Ct. 1216, 1222–1223, 86 L.Ed. 1159 (1942). The Court is also aware that over three (3) years have elapsed since Judge Green issued her ruling. Nonetheless, the Court believes that much of that delay, from January, 1979 through May, 1981, was the direct result of plaintiffs' approach to this litigation. *Donovan v. U. S. P. S.,* at 874. The Court therefore will not transcend Judge Green's ruling at the present time.[5] However, any and all future delays in payment will be the result of USPS' unwillingness to recognize settled law. USPS' unwillingness to accept the validity of settled law, especially *Laffey v. Northwest Airlines,* 567 F.2d at 464–466, will leave the Court "no choice but to consider awarding additional relief as may appear equitable, just, and proper."[6] *Smith v. U. S. P. S.,* No. 75–1570 (February 7, 1978).

---

**5.** With respect to the rounding violations, Judge Green refrained from awarding liquidated damages because USPS "might" have met the Laffey test. This "avowedly tentative" finding is not entitled to collateral estoppel effect. *See* pp. 876–877 *supra.*

**6.** Commencing July 15, 1981, The Court will increase the percentage of liquidated damages to be awarded, said percentage to reach 100% on October 15, 1981. Thereafter, the Court will entertain motions for the payment of interest.

## 902

### VI. JUDICIAL ESTOPPEL

██ Judicial estoppel "precludes a party from taking a position inconsistent with one previously taken with respect to the same facts in an earlier litigation . . . ." *Himel v. Continental Ill. Natl. Bank,* 596 F.2d 205, 210–211 (7th Cir. 1979), *quoting from In re Yarn Processing Patent Validity Litigation,* 498 F.2d 271, 279 (5th Cir. 1974), *cert. denied* 419 U.S. 1057, 95 S.Ct. 640, 42 L.Ed.2d 654 (1974). Its purpose is to prohibit litigants from "playing 'fast and loose,'" *Scarano v. Central R. R.,* 203 F.2d 510, 513 (3d Cir. 1953), or "blow[ing] hot and cold," *Ronson Corp. v. Aktiengesellschaft,* 375 F.Supp. 628, 630 (S.D.N.Y.1974) with the courts, and is designed to "protect the integrity of the courts and the judicial process." *United Virginia Bank v. Saul Real Estate,* 641 F.2d 185, 190 (4th Cir. 1981), *quoting from Duplan Corp. v. Deering Milliken, Inc.,* 397 F.Supp. 1146, 1177–1179 (D.S.C.1975).

The doctrine of judicial estoppel was addressed by the Court of Appeals in *Konstantinidis v. Chen,* 626 F.2d 933 (D.C.Cir. 1980). That case is inopposite to the instant litigation, however, because it was based on diversity of citizenship, not a federal question. *Id.* at 937. The *Chen* Court refused to apply the doctrine, believing that (1) the District of Columbia Court of Appeals had not approved it, and (2) it would not choose that case to introduce the concept of judicial estoppel. *Id.* at 938, 940. The Court in *Chen* also premised its decision on the fact that there is no "discernible modern trend" supporting application of the doctrine. Nevertheless, the *Chen* Court outlined the criteria for application of judicial estoppel, *viz.* (1) the same facts must be in issue, *id.* at 937, (2) the judicial body must have "been led astray," *id.* at 939, and (3) the assertions must not have been based on fraud, inadvertence, or mistake. *Id.* at 939.

All conceivable criteria support the application of judicial estoppel in the instant case. In *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 606 n. 18, 95 S.Ct. 1200, 1209 n.18, 43 L.Ed.2d 482 (1975), the Supreme Court characterized judicial estoppel as a "normal rule" which would "operate to bar relitigation . . . of federal issues." Moreover, subsequent to the decision in *Chen,* the Fourth Circuit applied judicial estoppel in federal question (bankruptcy) litigation. *United States Bank v. Saul Real Estate,* 641 F.2d at 190. Thus, there is ample precedent for the application of judicial estoppel in federal question litigation.

All the factors evaluated in *Chen* are present here. In *Donovan v. U. S. P. S.,* plaintiffs sought to prove the existence of a "non-plaintiff agreement." *Id.* at 875. Plaintiffs alleged that this agreement required USPS to "enter into a consent judgment with DOL that (1) waive[d] the statute of limitations, and (2) compensate[d] non-plaintiffs" consistent with the *Smith/Kaplan* agreement. *Id.* at 874 n. 10. Plaintiffs premised their case on three legal theories, one of which was promissory estoppel. The Court cited PMG Bolger's testimony in finding that no unjust enrichment would result from the Court's refusal to enforce the alleged agreement and therefore did not apply the doctrine of promissory estoppel, *id.* at 893, and USPS prevailed on the non-plaintiff agreement issue. This Court knows when an attempt has been made to lead it astray; that is precisely what is happening here.

Moreover, USPS cannot assert that PMG Bolger's testimony was predicated upon fraud, inadvertence, or mistake. This Court heard that testimony and knows exactly what it was based upon. The Postmaster General attempted to (and succeeded) in conveying the impression that he was a responsible public servant concerned about his employees. He knew how to present that image and did so. Neither fraud, not inadvertence, nor mistake played any part in Bolger's testimony.

██ Finally, the statute of limitations question at issue during the *Donovan* trial is exactly the same issue presented here. USPS cannot and will not be permitted to play fast and loose with this Court. It is judicially estopped from asserting the statute of limitations defense.

An appropriate Order follows this Memorandum Opinion.

## ORDER

Upon consideration of Plaintiff Secretary of Labor's Motions for Partial Summary Judgment and to Compel an Accounting, the Oppositions, Replies, and Responses thereto, the pleadings filed in response to this Court's June 15, 1981 Order, the Memorandum Opinion issued this date, and the entire record herein, it is by the Court this 25th day of June, 1981.

ORDERED, that Plaintiff Secretary of Labor's Motion for Partial Summary Judgment on the overtime violations alleged in paragraphs VI(a)–(d), (f), and (g) of the Complaint be and hereby is GRANTED; and it is

FURTHER ORDERED, that USPS be and hereby is ADJUDGED liable for liquidated damages in an amount equal to 80% of the back wages due and owed to USPS' eligible [1] FLSA non-exempt employees; and it is

FURTHER ORDERED, that Plaintiff Secretary of Labor's Motion to Compel an Accounting of Back Wages be and hereby is GRANTED; and it is

FURTHER ORDERED, that said accounting shall be performed by USPS, and the Secretary of Labor may supervise said accounting in any way he deems appropriate, provided that that accounting of back wages shall include:

(1) A computation of the FLSA regular rate of pay, 29 U.S.C. § 207(a), of each FLSA non-exempt employee covered herein for each FLSA workweek during the applicable period, which computation shall include all amounts and categories of remuneration paid to those employees, which were required to be, but were not, included in the calculation of their regular rate of pay, as alleged in paragraphs VI(a)–(d) and (f) of the Complaint herein;

(2) A computation of the number of hours or portions thereof in excess of 40 hours in each FLSA workweek during the applicable period for each FLSA non-ex-

empt employee covered herein which were recorded on defendant's official time-keeping records; such computation shall be governed by the following rules:

(a) In making such computation all time recorded through "in" or "out" clock rings, or original entries on time cards or other records, shall be treated as compensable time worked regardless of whether defendant previously denied compensation for such work in instances where such time records had been stamped or marked mechanically "time in excess of _____ hours not authorized" or "not worked" or "worked contrary to supervisors instructions", or marked with other notations disallowing such time;

(b) In the event that defendant asserts that any such recorded time was not worked, and offers to support such claim with credible evidence, a procedure for resolving such claims shall be established by agreement of the parties or Order of the Court; and

(c) Defendant may exclude from compensable time as *de minimus* only that time which falls within its daily five-minute leeway rule as that rule was administered during the applicable period;

(3) The amount of FLSA overtime compensation due each FLSA non-exempt employee covered herein for each FLSA workweek during the applicable period and the total FLSA overtime compensation for each such non-exempt employee for the applicable period computed by applying the proper FLSA regular rate of pay to all hours or portions thereof worked in excess of 40 in each FLSA workweek as determined pursuant to paragraphs (1) and (2) above;

(4) The total amount of compensation previously paid to each FLSA non-exempt employee covered herein during the applicable period through defendant's regular biweekly payroll system;

(5) The difference in total compensation due each FLSA non-exempt employee cov-

1. Employees who received compensation pursuant to the Smith/Kaplan settlement agreement are not eligible FLSA employees.

ered herein during the applicable period computed by subtracting the amount determined pursuant to paragraph (4) above from the total amount determined pursuant to paragraph (3) above;

(6) The total amount due each FLSA non-exempt employee covered herein determined pursuant to paragraph (5) above plus an additional amount of 100% representing liquidated damages;

(7) The total amount of remuneration paid to each FLSA non-exempt employee in USPS's "FLSA retroactive pay system";

(8) The difference in total compensation due each FLSA non-exempt employee covered herein computed by subtracting the amount determined pursuant to paragraph (7) above from the amount determined in paragraph (6) above;

(9) The accounting of the total compensation due each non-exempt employee covered herein pursuant to paragraphs (1)–(8) above shall commence no later than July 1, 1981, and shall be effectuated by USPS as promptly as possible. Such accounting shall be completed for each FLSA non-exempt employee covered herein whose work hours during the applicable period were recorded on USPS's Postal Service Data System (PSDA) computerized timekeeping system, and the results thereof reported to the Court as soon as possible, but in no event later than October 15, 1981. The accounting of total compensation due each FLSA non-exempt employee covered herein whose work hours during the applicable period were recorded on other than the PSDS timekeeping system shall be completed, and the results thereof reported to the Court as soon as possible, but in no event later than January 1, 1982; and

(10) Defendant shall report to the Court and the parties hereto the progress of the accounting on a biweekly basis commencing July 15, 1981.