John H. HARTLEY, Jr., M.D.,
Plaintiff–Appellant,

v.

MENTOR CORPORATION,
Defendant/Third–Party
Plaintiff/Appellee,

v.

AMERICAN HOSPITAL SUPPLY
CORPORATION, Third–Party
Defendant/Appellee.

No. 88–1641.

United States Court of Appeals,
Federal Circuit.

March 14, 1989.

Arthur Grebow, of Antin, Stern, Litz & Grebow, Los Angeles, Cal., submitted for plaintiff-appellant.

Alan M. Anderson, of Faegre & Benson, Minneapolis, Minn., submitted for defendant/third-party plaintiff/appellee. With him on the brief were Brian B. O'Neill, Counsel of Record, and Felicia J. Boyd, of Faegre & Benson, Minneapolis, Minn. Also on the brief was Henry H. Rossbacher, of Williams, Walsh & Sullivan, Los Angeles, Cal.

Before RICH, NIES, and MAYER, Circuit Judges.

NIES, Circuit Judge.

John H. Hartley, Jr., appeals from the July 14, 1987 final judgment of the United States District Court for the Central District of California, No. CV–86–7738–JSL, dismissing with prejudice his complaint against Mentor Corporation involving his United States Patent No. 3,934,274 ('274 patent). On a motion for summary judgment, the court ruled that because the '274 patent had been held invalid in prior litigation, *Hartley v. Minnesota Mining & Mfg. Co.*, 222 USPQ 590 (C.D.Cal.1983) (the 3M case), Hartley was precluded from relitigating the validity of the patent in this case. We affirm.

*Opinion*

I

■ Under *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788, 169 USPQ 513 (1971), mutuality of estoppel or privity is not required for a third party to invoke collateral estoppel,

i.e., issue preclusion,[1] with respect to a determination of patent invalidity in prior litigation. Issue preclusion in patent litigation may arise under the same conditions as in any litigation, the principal requirements being that the issue must have been actually litigated in the prior proceeding, the parties must have been given a full and fair opportunity to do so, and the issue must provide the basis for the final judgment entered therein. *See Restatement (Second) of Judgments* § 27 (1980). Issue preclusion may also arise, apart from the above requirements, by reason of a stipulated judgment or consent decree. Under the latter, the primary consideration is the intent of the parties. 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction,* § 4443 at 382 (1981).

## II

This case raises a novel question of application of principles of issue preclusion because it involves both a litigated issue and a stipulated judgment. In prior litigation the question of validity of the '274 patent was actually litigated in a suit by Hartley and his exclusive licensee, American Hospital Supply Corporation (AHS), as co-plaintiffs against Minnesota Mining and Manufacturing Co. (3M), an accused infringer. In that case Judge Lucas ruled, in granting summary judgment for 3M, that the '274 patent was invalid under 35 U.S.C. § 102(b) (1982) by reason of an on-sale bar. Thereafter, the parties to the 3M suit negotiated a settlement which provided, *inter alia,* for entry of a stipulated judgment dismissing Hartley's infringement claim against 3M with prejudice. The question is whether or not the ruling of invalidity in the 3M litiga-

tion provides a basis for issue preclusion in this proceeding.

In this case issue preclusion is asserted, not by 3M, but by a third party, Mentor Corporation. In March 1984, just after the 3M litigation ended, Mentor purchased certain assets of Hartley's co-plaintiff AHS, including AHS's rights under an exclusive worldwide licensing agreement with Hartley. Mentor refused to pay royalties on its U.S. sales in view of the 3M decision and a provision in the license that no royalties were required for U.S. sales should the '274 patent be held invalid. The record indicates that AHS had also represented to Mentor that no royalties were due on its U.S. sales. Because of Mentor's failure to pay U.S. royalties, Hartley cancelled the license and, in 1986, brought suit against Mentor for damages and injunctive relief.[2] Mentor counterclaimed, *inter alia,* for a declaratory judgment of invalidity of the '274 patent.

Before addressing the question of collateral estoppel being invoked by Mentor, we must resolve the question of whether the stipulated judgment in the prior case would have precluded Hartley from relitigating the issue of validity of the '274 patent with 3M in subsequent litigation, that is, whether 3M, a party in the first suit, could assert issue preclusion. If 3M could not assert issue preclusion, *a fortiori,* no estoppel could extend to the third party Mentor as a result of the judgment therein.

## A

*Issue Preclusion May Rest on a Stipulated Judgment*

Hartley urges that where a judgment is entered pursuant to a stipulation of

1. The application of principles of res judicata and collateral estoppel is not a matter committed to the exclusive jurisdiction of this court. Thus, we have looked particularly to the law of the Ninth Circuit, where an appeal would lie in other cases from the district court here, to resolve the matter to the extent such precedent is discernible and distinctive. For convenience, however, we will follow the terminology adopted in the Restatement (Second) of Judgments, i.e., "claim" and "issue" preclusion. *See Jackson Jordan, Inc. v. Plasser American Corp.,* 747 F.2d 1567, 1575–78, 224 USPQ 1, 7–9 (Fed. Cir.1984); *International Order of Job's Daugh-*

*ters v. Lindeburg & Co.,* 727 F.2d 1087, 1090–91, 220 USPQ 1017, 1019 (Fed.Cir.1984).

2. While not specifically pleaded as a patent infringement suit, Mentor successfully had the case removed from state court to the district court on the ground that that was its "real nature." *See Federated Dept. Stores, Inc. v. Moitie,* 452 U.S. 394, 397 n. 2, 101 S.Ct. 2424, 2427 n. 2, 69 L.Ed.2d 103 (1981); *see also Air Prods. & Chems., Inc. v. Reichhold Chems., Inc.,* 755 F.2d 1559, 1561, 225 USPQ 121, 122 (Fed.Cir.), *cert. denied,* 473 U.S. 929, 106 S.Ct. 22, 87 L.Ed.2d 700 (1985).

the parties, the judgment will give rise only to claim preclusion, not issue preclusion, citing 18 C. Wright, A. Miller & E. Cooper, *supra* § 4443 at 382–85. While generally correct, the stated proposition is not an absolute. Where rulings made after a full and fair opportunity to litigate are firm and consistent with the subsequent settlement agreement by the parties and the judgment actually entered in the case, issue preclusion has been applied as to those issues when raised in a subsequent suit, as in *Donovan v. United States Postal Service*, 530 F.Supp. 894, 898–900 (D.D.C.1981). *See also Employees Own Fed. Credit Union v. City Of Defiance*, 752 F.2d 243, 245 (6th Cir.1985); *Swift Chem. Co. v. Usamex Fertilizers, Inc.*, 646 F.2d 1121 (5th Cir. 1981); *E.E.O.C. v. Jacksonville Shipyards, Inc.*, 696 F.Supp. 1438, 1442 (M.D.Fla.1988). Moreover, a stipulated final judgment may rest in part on a court's rulings during the course of a trial and in part on the agreement of the parties. *See Hughes v. Santa Fe Int'l Corp.*, 847 F.2d 239, 241–42 (5th Cir.1988). Thus, that a judgment is entered by stipulation does not *in and of itself* remove the effect of a court's prior determination of specific issues in the litigation. A stipulated or consent judgment, like a contract, must be construed to determine its effect in light of all of the circumstances. 18 C. Wright, A. Miller & E. Cooper, *supra* § 4443 at 383.

 In this case, nothing in the stipulated judgment conflicts with the invalidity ruling by Judge Lucas. The judgment itself neither expressly nor by necessary implication has the effect of vacating that ruling.[3] Thus, the prior invalidity ruling could be preclusive. A further inquiry into the prior proceedings is necessary.

 Hartley varies his argument that a stipulated judgment does not give rise to issue preclusion by invoking, albeit inaptly, another valid concept, namely, that issues which could not be appealed are never precluded. An apt application of that premise would be where a party wins on its claim, but loses on an issue. No issue preclusion attaches to the lost issue which could not by itself be appealed. *Jackson Jordan, Inc. v. Plasser American Corp.*, 747 F.2d 1567, 1577–78, 224 USPQ 1, 8–9 (Fed.Cir. 1984); *Restatement* § 28(1). However, voluntary relinquishment of one's right to appeal, where one stands as overall loser, does not fall within that rationale. *See Schlegel Mfg. Co. v. USM Corp.*, 525 F.2d 775, 187 USPQ 417 (6th Cir.1975), *cert. denied*, 425 U.S. 912, 96 S.Ct. 1509, 47 L.Ed.2d 763, 189 USPQ 384 (1976). Indeed, Hartley's theory would bar giving preclusive effect to any consent judgment, a view which has no support to our knowledge in any jurisdiction, and clearly not in the Ninth Circuit.

Hartley is wide of the mark with his argument, based on *Luben Industries, Inc. v. United States*,[4] that the ruling of Judge Lucas on invalidity was merely an "interlocutory" order and, therefore, provided no basis for issue preclusion. Unlike *Luben*, a final judgment was entered in the 3M case which is the basis for the estoppel. Contrary to Hartley's understanding, issue preclusion is likely to be based on what was *at the time* an "interlocutory" ruling, and generally such orders become finalized upon entry of the judgment in the case. A significant part of an analysis of issue preclusion is to review the prior litigation carefully to determine what issues were resolved during the course of proceedings by the court and were necessary to the judgment. *Jackson Jordan* 747 F.2d at 1577–78, 224 USPQ at 6–8; *Restatement* § 27. An answer to issue preclusion can rarely be obtained simply by reading the judgment itself.

---

3. The judgment also dismissed 3M's counterclaims with prejudice, which included a request for a declaration of invalidity of the '274 patent. A stipulated dismissal with prejudice of a declaratory judgment action does not resolve the merits of the underlying claim, *Kaspar Wire Works, Inc. v. Leco Engineering & Machine, Inc.*, 575 F.2d 530, 535–37, 198 USPQ 513, 515–18 (5th Cir.1978), and, thus, this part of the judgment is not inconsistent with Judge Lucas' invalidity ruling. Also, 3M's agreement that Hartley could seek reissue is in line with the court's decision that the patent was invalid as originally issued.

4. 707 F.2d 1037 (9th Cir.1983).

Similarly, Hartley overstates the proposition that a settlement moots prior court rulings in a case. In *Ringsby Truck Lines, Inc. v. Western Conference of Teamsters*, 686 F.2d 720, 721–22 (9th Cir. 1982), the Ninth Circuit specifically refused to vacate a district court's judgment and to hold that no collateral estoppel effect could arise from the court's findings simply because the controversy was mooted by settlement. *Accord Gould v. Control Laser Corp.*, 866 F.2d 1391, 1392, 9 USPQ2d 1718, 1721 (Fed.Cir.1989). Under Ninth Circuit law, to be assured that the judgment here would have no collateral estoppel effect, Hartley would have had to have the 3M court vacate its order, which he failed to do; otherwise the collateral estoppel effect of the judgment is left for decision by the district court in which it is asserted. *Id.* at 722; *accord United States v. Munsingwear, Inc.*, 340 U.S. 36, 40, 71 S.Ct. 104, 107, 95 L.Ed. 36 (1950).

With respect to whether the issue of validity was essential to the judgment or was intended to be resolved thereby, it is significant that 3M did not enter into the familiar type of consent decree under which an accused infringer acknowledges validity and infringement of a patent in exchange for a license. The stipulated judgment here presents the apparently rare occasion where a patentee dismissed his claim with prejudice. *See* Note, *"To Bind or Not to Bind": Bar and Merger Treatment of Consent Decrees in Patent Infringement Litigation*, 74 Colum.L.Rev. 1322, 1340 (1974). Such a judgment operates as an adverse adjudication on the merits of a claim. *Lawlor v. National Screen Serv. Corp.*, 349 U.S. 322, 327, 75 S.Ct. 865, 868, 99 L.Ed. 1122 (1955); 1B J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice* ¶ 0.409[1] at 307 (2d ed. 1988). Hartley, therefore, lost to 3M on the merits, and one possible ground to support the adverse judgment against Hartley would be invalidity of the '274 patent. Noninfringement would be another.

Hartley argues that it was the intent of the co-plaintiffs Hartley and AHS that the stipulated judgment have no collateral estoppel effect on the validity issue. As indicated, the intent of the parties is generally controlling with respect to the preclusive effect of a stipulated judgment. Again, Hartley states, but misapplies, a valid premise. The difficulty with his position is that Hartley makes no assertion that 3M, the adverse party, shared the intent of the co-plaintiffs. With respect to the discernible intent of 3M, indeed, of Hartley himself vis-a-vis 3M, the record discloses just the opposite. The settlement agreement expressly states that the parties wished to compromise "all present and future disputes between them with respect to U.S. Patent No. 3,934,274." Hartley covenanted "never to sue" 3M, any purchaser of its business, or its customers for "past, present, or future infringement" of the '274 patent "or any reissued or reexamined counterparts thereof." Thus, the judgment could not possibly mean that the litigation resolved only an infringement claim against the particular 3M devices in suit. Rather, Hartley was unequivocally precluded from asserting the '274 patent regardless of what devices 3M made.

In sum, we conclude that the judgment in the 3M litigation provided 3M with the defense of patent invalidity as a matter of issue preclusion should Hartley have attempted to assert the '274 patent against 3M on any old or new claim. The judgment was not merely a bar to relitigation of a particular claim by Hartley against 3M. The judgment was intended to and does preclude Hartley from relitigating the validity of the '274 patent, at least vis-a-vis 3M.[5]

## B

### Mentor's Reliance on Issue Preclusion

Having concluded that Hartley would have been precluded from relitigating the

---

**5.** Hartley's position that the courts should favor and enforce settlement agreements is one this panel heartily endorses. The question here is not whether an agreement should be enforced but rather what did the settlement agreement mean. From 3M's standpoint it meant much more than Hartley acknowledges.

issue of an on-sale bar with 3M, we address whether there are circumstances which justify Hartley's relitigation of that issue vis-a-vis others, or at least against Mentor. Hartley argues that he was pressured into settling by AHS, that both he and AHS intended that by reason of the settlement the invalidity holding would have no collateral estoppel effect and that, particularly, it would not affect their licensee/licensor relationship. Because, per Hartley, AHS is estopped to assert collateral estoppel, Mentor, as its successor in interest, should also be estopped. Hartley also asserts error by the district court in cutting off discovery directed to proof of AHS's intent.

■ With respect to the discovery issue, the district court found no need for further development of the record. The "coercion" Hartley sought to establish was that AHS withdrew its financial underwriting of further litigation. The trial court ruled that proof of coercion of that type would prove nothing, particularly as AHS had no obligation to provide financial support. We agree. Also, that AHS was the driving force for settlement can be, and was, assumed. The ruling on summary judgment here would be unchanged with additional proof of those matters.

■ On the merits the district court ruled that, assuming AHS continued to behave after the judgment as if the patent were valid,[6] AHS would not have been estopped to change its mind and, like the rest of the world, rely on the invalidity ruling. Thus, per the court, Mentor, which was in even a better position than AHS, could not possibly be estopped by AHS's conduct. Hartley urges this ruling was legally erroneous because the trial court failed to decide the collateral estoppel effect of the stipulated judgment on the basis of the "intent" of the parties. As previously indicated, however, a stipulated judgment must be construed in accordance with the discernible intent of all of the parties, not merely that of the co-plaintiffs. That the co-plaintiffs may have had a private understanding of the effect of the judgment neither adds

to nor subtracts legally from the collateral estoppel effects of the adverse judgment. If Hartley was actually misled by AHS, he may have a tort claim of some nature against AHS, but Hartley has shown no substantive reason why the invalidity ruling of the prior suit should be treated as a nullity by reason of his private dispute with AHS.

Hartley has suggested, but not by more than an undercurrent theme throughout his arguments, that the on-sale bar decision of Judge Lucas was wrong under the law of the Federal Circuit, particularly as set forth in the decision in *TP Laboratories, Inc. v. Professional Positioners, Inc.*, 724 F.2d 965, 971, 220 USPQ 577, 582 (Fed. Cir.), *cert. denied,* 469 U.S. 826, 105 S.Ct. 108, 83 L.Ed.2d 51, 224 USPQ 616 (1984), and, therefore, should be relitigated. He suggests that the timing of matters was serendipitously bad in that *TP Laboratories* came out just after Judge Lucas's ruling. However, the *TP Laboratories* decision was handed down more than a month before the stipulated judgment was entered; Judge Lucas was not asked to vacate his ruling or even reconsider it in view of the *TP* decision; and, in any event, it is not the least bit clear that the facts of this case parallel those of *TP Laboratories.* Any implication that Judge Lucas's decision represents a basic miscarriage of justice is flatly rejected.

### C

#### *Inconsistent Positions*

■ Hartley argues that issue preclusion should not be allowed because of the inconsistency between the positions taken by AHS and Mentor in the two suits. Hartley's argument bears no resemblance to the doctrine of inconsistent positions discussed in *Jackson Jordan,* 747 F.2d at 1578–80, 224 USPQ at 9–10, namely, that a litigant should not be allowed to *win* a suit on one theory and seek to *win* a second suit before the same court by asserting the exact opposite. Such posturing is an af-

---

**6.** An extremely short period of time is involved. The final judgment was entered on February 9, 1984. AHS assigned its prostheses business to Mentor on March 31, 1984.

front to the court. However, AHS did not *win* in the 3M litigation; it lost. There could be no possible affront to the 3M court by AHS adopting the position in a second suit which that court held was correct.

### III

For the foregoing reasons, the appealed judgment is affirmed.

AFFIRMED