Robert Edwin JOHNSON and Janice
Ann Johnson, Plaintiffs–
Appellants,

v.

WAY COOL MANUFACTURING L.L.C.,
VCI Capital, Inc., Steven C. White
(doing business as Way Cool Manu-
facturing L.L.C.), and Robert D. Mah-
er (doing business as Best & Flanna-
gan, L.L.P.), Defendants–Appellees.

and

Gerald E. Helget (doing business as
Ryder, Bennett, Egan & Arundel,
L.L.P.), Defendant–Appellee.

No. 01–1306.

United States Court of Appeals,
Federal Circuit.

Oct. 10, 2001.

Before LOURIE, BRYSON, and LINN, Circuit Judges.

## DECISION

PER CURIAM.

Robert and Janice Johnson are the owners of U.S. Patent No. 5,857,350 ("the '350 patent"), which is directed to an evaporative cooling device. The Johnsons brought suit against Way Cool Manufacturing L.L.C., VCI Capital, Inc., Steven C. White, Robert D. Maher, and Gerald E. Helget in the United States District Court for the District of Minnesota. They alleged that the defendants had directly infringed the '350 patent, that they had induced infringement of the '350 patent, that they had breached a licensing agreement, and that they had tortiously interfered with contractual relations. The district court dismissed the Johnsons' complaint, finding that all of their claims were precluded by a previous state court judgment. Finding no error by the district court, we *affirm*.

## BACKGROUND

The Johnsons are the former owners of Way Cool Manufacturing, Inc ., a Florida corporation engaged in the business of manufacturing portable evaporative cooling units. Way Cool Manufacturing L.L.C., one of the defendants, is a Minnesota limited liability company that was formed to purchase the assets of Way Cool Manufacturing, Inc., from the Johnsons. That purchase was implemented through an asset purchase agreement dated June 24, 1999. In addition, the Johnsons and

Way Cool Manufacturing L.L.C. entered into an exclusive licensing agreement on July 1, 1999. The licensing agreement granted Way Cool Manufacturing L.L.C. "an exclusive, worldwide license to make, use, or sell Units based on the Patented Technology [of the '350 patent] and to utilize the Patented Technology for any other purposes or applications at Licensee's sole and absolute discretion." The licensing agreement also provided that Way Cool Manufacturing L.L.C. would make two lump-sum royalty payments of $250,000 to the Johnsons and would pay a royalty of $100 for each unit that used the patented technology and was sold after a certain date.

Subsequently, Way Cool Manufacturing L.L.C. began manufacturing the cooling units referred to in the licensing agreement. At some point, Way Cool Manufacturing L.L.C. concluded that the product it was manufacturing was not covered by the '350 patent and therefore stopped making royalty payments to the Johnsons. The Johnsons countered by asserting that Way Cool Manufacturing L.L.C. had breached the licensing agreement and that the license to practice the '350 patent was thus terminated. Way Cool Manufacturing L.L.C. then served the Johnsons with a demand for arbitration pursuant to an arbitration clause in the licensing agreement. When the Johnsons refused to submit to arbitration, Way Cool Manufacturing L.L.C. filed an action in Minnesota state court to compel arbitration.

After the Johnsons filed this action in federal court, the state court appointed an arbitrator. An arbitration hearing was held on December 29, 2000, but the Johnsons did not attend the hearing. The arbitrator subsequently determined that the Johnsons had breached both agreements and ordered both injunctive and monetary relief against them. The state court there-after entered a judgment confirming the arbitration award.

The parties to this action then presented the district court with cross-motions for summary judgment and several ancillary motions. The district court dismissed the complaint for want of subject matter jurisdiction and denied all non-dispositive motions as moot. This appeal followed.

## DISCUSSION

A federal court must give the same preclusive effect to a state court judgment that the judgment would be accorded in courts of the rendering state. 28 U.S.C. § 1738. Moreover, only the Supreme Court may review state court judgments. 28 U.S.C. § 1257. Applying those principles, the Supreme Court in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), held that because lower federal courts lack jurisdiction to review state court judgments and must accord them full faith and credit, a lower federal court may not entertain an action that directly or in effect seeks to overturn a state court judgment. *See Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031, 1034 (8th Cir.1999); 18 Charles Alan Wright et al., *Federal Practice and Procedure* § 4469.1 (2d ed.1988 & 2001 supp.). Like the related doctrines of res judicata and law of the case, the principle established by the *Rooker* and *Feldman* cases (commonly referred to as the *Rooker–Feldman* doctrine), is not a procedural issue that "pertains to patent law" or "bears an essential relationship to matters committed to our exclusive control by statute," and we therefore apply regional circuit law to this issue. *See Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359, 50 USPQ2d 1672, 1675 (Fed.Cir.1999) (en

banc in relevant part); *Hartley v. Mentor Corp.*, 869 F.2d 1469, 1471 n. 1, 10 USPQ2d 1138, 1139 n. 1 (Fed.Cir.1989).

■ The *Rooker–Feldman* doctrine deprives lower federal courts of jurisdiction not only over claims that are identical to claims adjudicated in the state court, but also over claims that are "inextricably intertwined" with claims that were the subject of a state court judgment, even if the state and federal claims were not identical. *Feldman*, 460 U.S. at 482 n. 16, 103 S.Ct. 1303; *Lemonds v. St. Louis County*, 222 F.3d 488, 493 (8th Cir.2000). "A claim is inextricably intertwined if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir.1995). In other words, a federal action is precluded "if the relief requested would effectively reverse the state court decision or void its ruling." *Id.; see also Keene Corp. v. Cass*, 908 F.2d 293, 296–97 (8th Cir.1990) ("Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.").

■ We note that in this case the Johnsons did not participate in the arbitration or the state court proceeding. Under the law of the Eighth Circuit, however, the *Rooker–Feldman* doctrine "is broader than claim and issue preclusion because it does not depend on a final judgment on the merits." *Charchenko*, 47 F.3d at 983 n. 1. Similarly, the fact that some of the defendants in this case were not parties to the state litigation does not prohibit application of the doctrine. *See Lemonds*, 222 F.3d at 495.

The state court judgment in this case confirmed the arbitration award against the Johnsons. The arbitration award concluded that the Johnsons had breached the licensing agreement and the asset purchase agreement, and it concluded that no royalty payments were due the Johnsons unless and until they sought reissue of the '350 patent. Thus, the arbitration award necessarily concluded that the licensing agreement was a valid and enforceable contract. To the extent that the Johnsons argue that there is no contract or agreement between them and Way Cool Manufacturing L.L.C., their position conflicts with the state court judgment.

As to the Johnsons' claims regarding breach of contract and tortious interference with contractual relations, there is no doubt that the *Rooker–Feldman* doctrine deprives the district court of jurisdiction. A ruling by a federal court that Way Cool Manufacturing L.L.C. breached a contract with the Johnsons, or that any of the other defendants induced such a breach, would effectively reverse the contrary judgment of the state court. The district court therefore properly dismissed those claims.

■ The Johnsons' patent infringement claims present a more complicated problem because neither the arbitrator nor the state court addressed the issue of patent infringement. Nonetheless, we reach the same result because the state court judgment stands squarely in the way of the Johnsons' patent infringement claims.

Under 35 U.S.C. § 271, there is no liability for infringement if the accused infringer acted under authority granted by the patentee. Here, the licensing agreement expressly grants Way Cool Manufacturing L.L.C. the right to practice the '350 patent. Under the agreement, Way Cool Manufacturing L.L.C. cannot be liable for direct infringement, and other parties cannot be liable for inducing Way Cool Manufacturing L.L.C. to infringe the '350 patent. A claim of infringement of the '350

patent, therefore, cannot succeed if the licensing agreement was an enforceable authorization for Way Cool Manufacturing L.L.C. to practice the patent.

In this case, the Johnsons cannot succeed with their federal claim of patent infringement unless the state court wrongfully decided the state law issue before it, namely, whether there was a valid licensing agreement between the Johnsons and Way Cool Manufacturing L.L.C. Accordingly, we conclude that the claim of patent infringement is inextricably intertwined with the state court judgment, and therefore under the *Rooker–Feldman* doctrine the district court did not have jurisdiction to decide the claim.

■ The Johnsons assert that the *Rooker–Feldman* doctrine does not apply because the state court did not have proper jurisdiction over the state law issue before it. To be sure, the *Rooker–Feldman* doctrine does not deprive a federal court of jurisdiction in a case in which the state court did not have jurisdiction to enter a valid judgment. In such a case the state court judgment would be void and would have no preclusive effect under any theory. *See, e.g., Underwriters Nat'l Assurance Co. v. N.C. Life & Accident & Health Ins. Guar. Ass'n*, 455 U.S. 691, 704–05 & n. 10, 102 S.Ct. 1357, 71 L.Ed.2d 558 (1982); *In re James*, 940 F.2d 46, 52 (3d Cir.1991) ("federal courts that are classed as 'inferior' under Article III have the power to vacate only state court judgments that are considered void *ab initio*").

■ In this case, however, it is clear that the state court had jurisdiction over the claims before it. With respect to personal jurisdiction, the licensing agreement includes a choice-of-forum clause under which both parties consented to jurisdiction in Minnesota. With respect to subject matter jurisdiction, the state court plainly had jurisdiction over the breach of con-

tract claim. While it is true that the state court would not have subject matter jurisdiction over an infringement claim brought by the Johnsons, that in no way deprives the state court of jurisdiction over the contract claim. Moreover, to the extent that issues of patent validity and infringement may have been implicated as defenses in the arbitration or state court proceedings, the state court would also have jurisdiction over such issues in that context. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988); *Lear, Inc. v. Adkins*, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969).

The Johnsons also assert, apparently in support of their argument that the state court did not have jurisdiction over the contract dispute, that there was a "private agreement" between themselves and the defendants and therefore no controversy before the state court. While parties are free to enter into agreements, one party's charge that the other has breached such an agreement is precisely the sort of event that creates a controversy for a court to resolve. In a seemingly contradictory argument, the Johnsons also assert that no agreement existed between them and the defendants because any such agreement had been revoked prior to filing of the state court action. Even if the Johnsons had attempted to revoke their agreement with Way Cool Manufacturing L.L.C., the validity of that agreement was before the arbitrator, who found that the parties had an enforceable agreement. The federal court was not free to revisit that conclusion.

■ Finally, the Johnsons argue that the record indicates that the district court judge should have recused himself from the case because he demonstrated bias and prejudice by receiving and acting upon ex

parte communications from the defendants. The Johnsons, however, have not shown that the district court judge either "relied upon knowledge acquired outside [the judicial proceedings]" or "displayed deep-seated and unequivocal antagonism that would render fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 556, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). Thus, recusal was not required.